ORDERED.

**Dated:  July 20, 2016**

K. Rodney May
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION
www.flmb.uscourts.gov

In re

COLONY BEACH AND TENNIS                     Case No. 8:13-bk-00348-KRM
CLUB, INC.

COLONY BEACH, INC.                          Case No. 8:13-bk-00350-KRM

RESORTS MANAGEMENT, INC.                    Case No. 8:13-bk-00354-KRM

     Debtors.
_____/

BREAKPOINTE, LLC and
COLONY BEACH AND TENNIS CLUB
ASSOCIATION, INC., for itself and on
behalf of ALL UNIT OWNERS,

     Plaintiffs,

vs.                                         Adv. Proc. No 8:14-ap-776-KRM

COLONY LENDER, LLC,

     Defendant.
_____/

MEMORANDUM OPINION ON CROSS MOTIONS FOR
SUMMARY JUDGMENT REGARDING DEBTORS' OWNERSHIP OF REC LEASE,
LEASE REJECTION DAMAGES CLAIMS AND RENT COLLECTION RIGHTS

<u>INTRODUCTION</u>

This adversary proceeding is one of the last remaining disputes in the struggle for control of the 18-acre Colony Beach and Tennis Club Resort (the "Resort").[1]  The Chapter 7 trustee (the "Trustee") for the above-referenced debtors filed this proceeding in September 2014 on behalf of two of the debtors, Colony Beach and Tennis Club, Inc., and Colony Beach, Inc. (hereinafter referred to together as the "Debtors"), to confirm their ownership of the right to collect rents due under a defaulted long-term lease of three acres of the Resort.  The issue presented here is whether, after the satisfaction of its foreclosure judgment by the sale of the real estate, the mortgagee may continue to collect on the additional collateral of the Debtor's interest in the defaulted lease and the rent due from obligors thereunder.

The relevant facts are not in dispute.  The Court has previously ruled that it never modified the automatic stay, even by implication, to permit the mortgagee to collect either pre-foreclosure accrued rent or claims for lease rejection damages against the former tenant.  The Court reaffirms that decision herein and further rules that the right to collect rent and rejection damages did not pass to the mortgagee under a recorded covenant that purports to run with the Debtors' real estate that it acquired by foreclosure.[2]

---

[1]  Hereinafter, all citations to the record in this adversary proceeding will be to " Doc. No. ___" and all citations to papers in these consolidated bankruptcy cases will be to "Main Case Doc. No. ___."  Unless otherwise stated, all statutory references are to the Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.*

[2]  Determining whether any particular asset is included in the bankruptcy estate, because of a debtor's legal or equitable interest on the petition date, is a "core proceeding" under 28 U.S.C. § 157(b)(2)(A) and (E).  Therefore, the Court may enter a final order in this proceeding.  This memorandum opinion constitutes the Court's findings of fact and conclusions of law, in accordance with Fed. R. Bankr. P. 7052.

## FACTUAL BACKGROUND

The Parties

When they filed for Chapter 11 relief in January 2013, the Debtors owned a combined 80% interest in just under three acres of the Resort, in which the swimming pool, tennis courts, clubhouse and spa were located.  Thus, the property is collectively referred to as the "Rec Facilities Property."  They also owned (1) a  combined 80% interest, as co-lessors, in a 99-year lease (the "Rec Lease") of that property, which lease was rejected in Chapter 11 by the tenant, the Colony Beach and Tennis Club Association (the "Association"), (2) proofs of claim against the Association for damages from the rejection of the Rec Lease, and (3) inchoate claims against owners of condominium units in the Resort ("Unit Owners"), who are alleged to be co-obligors for rent due under the defaulted Rec Lease.[3]

In 2010, the mortgagee and defendant herein, Colony Lender, LLC ("Colony Lender"), acquired Bank of America's claims and its related collateral interests in substantially all of the Debtors' assets.[4]  Colony Lender also became the successor plaintiff in the bank's 2009 foreclosure action.[5]  In 2014, Colony Lender was granted limited relief from the automatic stay to sell the Debtors' interest in the Rec Facilities Property.  The foreclosure sale produced a bid

---

[3]  The Resort has been closed since 2010 and the Rec Facilities Property is unused and unoccupied.  Ownership of the Rec Lease means, essentially, the standing to assert claims against the Unit Owners who are alleged to be co-obligors.  *See* note 16 *infra* and accompanying text.

[4]  Bank of America had obtained the loans and related collateral interests, as the assignee of SunTrust Bank, which was the successor to Huntington Bank, which had succeeded the original lender, Republic Bank.

[5]  On or about March 8, 1995, the Debtors had executed and delivered to Republic Bank a Mortgage and Security Agreement (the "1995 Mortgage") encumbering their 80% interests in the Rec Facilities Property, granting liens on appurtenances, personal property and the Rec Lease, as security for several loans and future advances.  Doc. No. 58, Ex. A.  Bank of America's 2009 Complaint described the 1995 Mortgage as the "original mortgage" for the debt.  The Debtors also provided Republic Bank with a collateral assignment of leases, rents and profits.  The 1995 Mortgage was later modified, to cover additional loans and advances, by a Restated Mortgage and Security Agreement, dated September 19, 2000.  Doc. No. 58, Ex. B.

from a third party that would have fully satisfied the foreclosure judgment; but, Colony Lender elected not to accept it, then made a $1.00 overbid and took title to the Debtors' interests in the Rec Facilities Property.

The Association and Breakpointe, LLC ("Breakpointe"), which owns a 5% interest in the assets at issue, became co-plaintiffs in this proceeding in September 2015, after the Trustee and the Association concluded a court-approved settlement.[6]  The Trustee transferred his claims in this proceeding (and other assets) to the Association, in exchange for a sum that was sufficient to pay the claims of all creditors and administrative expenses.  The Court also allowed Breakpointe to intervene.  The Court has under consideration cross motions for summary judgment filed by Colony Lender, the Trustee, the Association and Breakpointe.[7]

---

[6] On August 26, 2015, the Association filed a motion to intervene as a party plaintiff because of the Trustee's proposed sale of assets.  If Colony Lender or its development partner had been the successful purchaser, this adversary proceeding would have been dismissed, with prejudice.  At a hearing on September 4, 2015, two competing bidders made enhanced offers in open court.  In turn, the Trustee recommended the Association's enhanced proposal, which the Court approved, by order entered on September 8, 2015.  Main Case Doc. No. 538. On April 13, 2016, the District Court dismissed Unicorp Acquisitions, LLC's appeal of the approving order (USDC Case 8:15-cv-2225-SDM, Doc. No. 29).

Thus, the Association acquired substantially all of the assets of the above-referenced debtors' estates, including their respective interests in this adversary proceeding and two other adversary proceedings.  The Association and Breakpointe filed intervenors' complaints seeking declaratory relief.  Doc. Nos. 54 and 56.  The Court heard the parties' arguments on February 9, 2016.

[7] The papers under consideration are:

- 8:14-ap-776-KRM
  Complaint filed 9/14/14 (Doc. No. 1)
  Amended Complaint (Doc. No. 54)
  Intervening Complaint by Breakpointe (Doc. No. 56)
  Answer by Colony Lender (Doc. No. 6)
  Answer to Cross Claim of Breakpointe by Colony Lender (Doc. No. 61)
  Answer to Amended Complaint by Colony Lender (Doc. No. 62)

- Amended Motion for Summary Judgment filed by Colony Lender on 10/2/2014 (Doc. No. 12)

- Response to Colony Lender's Motion for Summary Judgment and Cross Motion for Summary Judgment filed by Chapter 7 Trustee on 10/8/2014 (Doc. No. 17)

The Resort and the Rec Lease

The Resort, located on Longboat Key, became a world class destination for Gulf Coast tennis vacations after it opened in 1973.  It was operated by a limited partnership, the Colony Beach and Tennis Club, Ltd. (the "Partnership"), whose general partner was the third debtor in this case, Resorts Management, Inc.  All of the above debtors are affiliates of the developer, Dr. Murray Klauber.

About 15 acres of the Resort were put into a condominium, including 232 guest units, which were sold to Unit Owners by warranty deeds.  Each unit was required to be contributed to the Partnership's use for eleven months a year; each Unit Owner was then allowed free use of a unit for one month, subject to applicable reservations policies.  These arrangements have been

---

- Response in Opposition to Cross Motion for Summary Judgment filed by Colony Lender on 11/11/14 (Doc. No. 23)

- Response to Colony Lender's Opposition to Cross Motion for Summary Judgment filed by Chapter 7 Trustee on 11/12/14 (Doc. No. 24)

- Supplemental Motion for Summary Judgment filed by Colony Lender on 5/7/15 (Doc. No. 29) (filed to supplement motion in light of the Bankruptcy Court's Memorandum Opinion entered on 3/18/15)

- Cross Motion for Summary Judgment filed by Intervenor-Plaintiff, Association, on 11/24/15 (Doc. No. 55)

- Supplemental Brief on Summary Judgment filed by Intervenor-Plaintiff, Association, on 11/24/15 (Doc. No. 58)

- Cross Motion for Summary Judgment filed by Intervenor-Plaintiff Breakpointe on 11/24/15 (Doc. No. 57)

- Memorandum in Support of Cross Motion for Summary Judgment filed by Intervenor-Plaintiff Breakpointe on 11/24/15 (Doc. No. 59)

- Colony Lender's Response in Opposition to Breakpointe's Motion for Summary Judgment and Cross Motion for Summary Judgment on Breakpointe's Intervenor Complaint filed on 12/10/15 (Doc. No. 63)

- Colony Lender's Response in Opposition to Association's Motion for Summary Judgment and Cross Motion for Summary Judgment on Association's Intervenor Complaint filed on 12/10/15 (Doc. No. 64)

unavailable since 2010 when the Resort closed.[8]  The Unit Owners were also limited partners of the Partnership.  The common area of the condominium was administered by the Association.

Under the condominium's formative documents, the Association was required to be the tenant under the Rec Lease, from 1973 to 2072, at a stated rent plus a Consumer Price Index escalation every 10 years.  The lessor was an entity owned by Dr. Klauber, Colony Beach Associates, Ltd. ("CBA").  Before the formation of the Resort, CBA transferred its interest in the Rec Facilities Property and the Rec Lease to four entities in the following proportions:  Debtor CBTC (45%), Debtor CBI (35%), the Field Family Trust (15%) and the William W. Merrill Revocable Trust (5%).[9]

The Initial Bankruptcy Cases

The deterioration of the Resort led to a dispute in 2005–2006 between the Unit Owners and Dr. Klauber over how to finance its restoration.[10]  The Partnership sued the Association in 2007 to compel it to assess Unit Owners for the substantial redevelopment costs.[11]  In 2008, the Association filed for relief under Chapter 11.[12]  In 2009, the Partnership filed for Chapter 11 and operated the Resort on a limited basis for a short time, while abating the Unit Owners' "free

---

[8]  In 2010, the Court entered judgment evicting the Partnership from its use and possession of the guest units and common area because of the denial of Unit Owners' use privileges.  Main Case Doc. No. 256 at 8 (citing 8:10-AP-242, Doc. No. 23).

[9]  Mr. and Mrs. Field were the former owners of the entire property.  Mr. Merrill was the lawyer who put together the Resort's legal structure.

[10]  *See* Main Case Doc. No. 256 at 6.

[11]  *Id.*

[12]  Case No. 8:08-bk-16972-KRM.

month" privileges.[13]  In 2010, hotel operations were terminated and the Partnership's case was

converted to Chapter 7.[14]  The Resort is in a dilapidated state and remains shuttered today.

Even though it had paid all rents when it filed for Chapter 11 relief, the Association

rejected the Rec Lease under § 365(a).[15]  Each of the four co-lessors then filed proofs of claim in

the Association's case for damages according to the formula in § 502(b)(6) (the co-lessors'

proofs of claim are referred to collectively as the "Lease Rejection Damages Claims").[16]

The Association's confirmed Chapter 11 plan requires the Association to pay the Lease

Rejection Damages Claims in quarterly installments over 5 years, with 6% interest, commencing

after entry of a final order allowing the claims.[17]  In conjunction with the plan, the Association

objected to the co-lessors' claims and consolidated those objections with a pending lawsuit that it

had removed from state court (referred to as "AP 568").[18]  After a trial, the Court entered a

---

[13]  Case No. 8:09-bk-22611-KRM.

[14]  *See* Main Case Doc. No. 256 at 8.

[15]  Case No. 8:08-bk-16972-KRM, Doc. No. 21.  The motion was granted on December 30, 2008, and affirmed by the District Court in March 2010.  USDC Case 8:09-cv-535-VMC, Doc. No. 10.

[16]  Rejecting a lease under § 365 operates as a default, deemed to occur immediately prior to the filing of the petition.  This causes the claim for damages to have the status of a pre-petition general unsecured claim.  § 502(g)(1).  The amount of lease rejection damages is capped at the greater of the rent reserved by the lease for one year or 15%, not to exceed three years' rent.  § 502(b)(6).

[17]  Case No. 8:08-bk-16972-KRM, Doc Nos. 268, 284 and 308.  The Association is required to assess Unit Owners to make plan payments.  If Unit Owners default on assessed payments, Sections 6.2(c) and (d) of the plan require the Association to record liens against units and foreclose on them.  Article 7.3 of the Association's Chapter 11 Plan also provides for a "channeling" injunction:  the lessors were permanently enjoined, as long as the Association is not in default, from commencing or continuing any action or other proceedings against the Unit Owners and from enforcing any lien or encumbrance against the units.

[18]  Adv. Pro. No. 8:08-ap-00568-KRM.  The Association also removed to this Court the Partnership's state court lawsuit seeking damages and equitable relief to compel a special assessment for the restoration costs (Adv. Pro. No. 8:08-ap-00567-KRM, "AP 567").  After an eight-day trial in AP 567, this Court entered judgment in favor of the Association.  On July 27, 2011, the District Court reversed.  On October 24, 2012, this Court submitted its Report and Recommendation to the District Court, as instructed, that a judgment in favor of the Partnership be entered against the Association in the amount of $23,146,503.25 (AP 567, Doc. No. 170).  Entry of judgment was stayed when debtor, Resorts Management, Inc., one of the parties in AP 567, filed for Chapter 11 relief.

declaratory judgment, on January 15, 2010, that the Rec Lease was unconscionable and therefore not enforceable; the four Lease Rejection Damages Claims were disallowed.[19]

The District Court reversed.[20]  On October 24, 2012, this Court made a Report and Recommendation, as instructed on remand, that the four proofs of claim be allowed in the aggregate amount of $2,223,391.71.[21]  Entry of final judgment in AP 568 was stayed, however, when the co-lessor Debtors filed for Chapter 11 relief.

About a year after it acquired Bank of America's claims, Colony Lender bought the Field Trust's 15% interest in both the Rec Facilities Property and the Rec Lease.  But, Colony Lender did not acquire the Field Trust's Lease Rejection Damages Claim (Claim No. 20) against the Association.[22]  That same year, Breakpointe acquired the Merrill Trust's 5% interest in the Rec Facilities Property, the Rec Lease, and its Lease Rejection Damages Claim (Claim No. 19).

The "Triple Debtor" Case and AP 151

The three above-referenced debtors filed Chapter 11 petitions on January 11, 2013.  Their cases were administratively consolidated, leading to the frequent reference to the consolidated file as the "Triple Debtor" case.  The strategic purpose of the triple filing was to stay any further action in AP 568 (and AP 567) while the parties sought a consensual resolution of all disputes.[23]

---

[19]  Memorandum Opinion and Order on Debtor's Objections to Claims No. 16, No. 19, No. 20, and No. 21 (in General Case) and Debtor's Amended Complaint.  AP 568, Doc. Nos. 96 and 100.

[20]  AP 568, Doc. No. 128.

[21]  Claim No. 21, filed by CBTC, was recommended to be allowed in the amount of $1,000,525.90, and Claim No. 16, filed by CBI, was recommended to be allowed in the amount of $778,187.10.  AP 568, Doc. No. 152.

[22]  The Field Trust objected to confirmation of the Debtors' Chapter 11 plan, based on its continued ownership of its Lease Rejection Damages Claim.  Main Case Doc. No. 256 at 4.

[23]  *See* note 18 *supra* and accompanying text.

In their bankruptcy schedules, the Debtors listed their right to collect rents under the Rec Lease as personal property.[24]  On February 4, 2013, Colony Lender filed virtually identical motions for relief from the automatic stay in the CBTC (Doc. No. 24) and CBI (Doc. No. 23) cases, describing the Debtors' assets as:

> " . . . real estate and money due under a recreational facilities lease.  The security of Colony Lender is fully set out in its lengthy proof of claim filed as Claim No. 3.  The real estate is encumbered by [a] mortgage and the recreational facilities lease is encumbered by the security agreement and UCC filings set out as Exhibit F to the proof of claim. . . ."[25]

Colony Lender also described the accrued rent then due under the Rec Lease as a "receivable."[26]

Accordingly, the Debtors filed an adversary proceeding, on February 21, 2013 ("AP 151"), to avoid Colony Lender's liens on the rent collection rights because Bank of America's UCC-1 financing statement lapsed before their petition date.[27]  On December 5, 2013, this Court granted Debtors' motion for summary judgment, finding that the  bankruptcy estates' interests in the past due rents and the proofs of claim were intangible personal property, subject to UCC lien perfection requirements.  Accordingly, Colony Lender's lien in these assets, being unperfected on the petition date, was avoided under § 544(a).[28]

This judgment was reversed by the District Court on July 1, 2014.[29]  The District Court reasoned that the Lease Rejection Damages Claims were claims for rent and "[s]ince the UCC-1

---

[24]  Neither the Debtors, nor the Trustee, have taken any action against Unit Owners.  In addition to the Rec Facilities Property, the Debtors also owned two unencumbered condominium units in the Resort which are not relevant to the present dispute.

[25]  Main Case Doc. No. 24 at 3-4.

[26]  *Id.* at 9.

[27]  Adv. Pro. No. 8:13-ap-151-KRM.

[28]  AP 151, Doc. No. 30.

[29]  USDC Case 8:14-cv-00726-JSM, Doc. No. 27.

financing statement is not the appropriate vehicle to perfect a security interest in rents from real property, the lapse of the UCC-1 in this case is inconsequential."[30]  The District Court remanded with instructions to "reinstate Colony Lender to its secured status as to rejection damages."[31]  No action was taken in the bankruptcy court, however, before the District Court's order became effective on July 15, 2014, the day after the foreclosure sale.[32]

Stay Relief and the Foreclosure Sale

During the Triple Debtor case, the Court entered four orders modifying the automatic stay to allow Colony Lender to enforce, incrementally, its rights against its collateral.[33]  The first of these orders, entered on May 13, 2013, allowed Colony Lender to obtain a foreclosure judgment.  On August 27, 2013, judgment was entered against the Debtors (and other obligors) in the amount of approximately $14.4 million (the "Foreclosure  Judgment").[34]

The Foreclosure Judgment described the parcels of land comprising the Rec Facilities Property (and other obligors' property) and authorized them to be sold if the judgment was not otherwise satisfied, together with:

> "(A) . . . all the improvements now or hereafter erected on such property and all fixtures now or hereafter attached thereto, together with each and every tenements, hereditaments, easements, rights, powers, privileges, immunities and appurtenances thereunto belonging or in anywise appertaining and the reversion and reversions, remainder and remainders, and also all the estate,

---

[30]  USDC Case 8:14-cv-00726-JSM, Doc. No. 27 at 6.

[31]  *Id.*

[32]  Under Fed. R. Bankr. P. 8017(a) District Court appellate rulings are automatically stayed for fourteen days after entry.  Accordingly, the District Court's ruling in AP 151 was stayed through and including July 15, 2014.  Before this Court could enter the instructed order, Colony Lender's foreclosure judgment was satisfied by the July 14, 2014, sale of the real estate collateral.

[33] Main Case Doc. Nos. 97, 161, 225 and 259.

[34]  Doc. No. 54, Ex. E.

right, title, interest, homestead, right of dower, separate estate, property, possession and claim whatsoever in law as well as in equity of any mortgagor of, in and to the same in every part and parcel there of unto mortgagee in fee simple.

(B) . . . a security interest in all personal property, excluding household goods which are not purchased with the proceeds of the notes, and fixtures affixed to or located on the property described above in Exhibit "A."

(C) . . . *all rents, leases, issues, profits, revenue, income, proceeds and other benefits from the property described in Exhibit "A."*

(D)  All insurance policies and proceeds thereof and all condemnation proceeds, awards, damages, and claims relating to or derived from the property described in paragraphs (A), (B) and (C) hereof.

(E)  Everything referred to in paragraphs (A), (B), (C) and (D) hereof and any additional property hereafter acquired by an mortgagor and subject to the lien of the mortgage or any part of the properties described herein."[35]

At a hearing on September 5, 2013, on Colony Lender's renewed request to complete the

foreclosure, counsel for the parties discussed AP 151 and the pending challenge to Colony

Lender's lien on the rent collection rights.[36]  With the Debtors' consent, the Court granted

---

[35]  Doc. No. 54, Ex. E at 12 (emphasis added).

[36]  Main Case Doc. No. 406, at 16-17.  The following colloquy took place at the hearing on September 5, 2013:

> THE COURT:  No, I'm lifting the stay.
> MR. ASSAF [for Colony Lender]:  Oh, good, okay.
> MR. ASSAF:  Great.
> MR. MARKHAM [for Debtors]:  On the real estate only, Your Honor. . . .
> THE COURT: . . . It's going to be on the real estate, 90 days.  And in the meantime, we'll adjudicate whether your lien attaches to the judgment [sic]. . . .
> THE COURT:  And I don't recall which adversary that's in.
> MR. MARKHAM:  Your Honor, that is in Adversary –
> THE COURT:  151?
> MR. MARKHAM:  -- 151.  That's correct, Your Honor
> THE COURT:  Okay.
> MR. MARKHAM:  -- which was on for pretrial today anyway.
> MR. ASSAF:  And I will submit an order to you on the lift stay.
> THE COURT:  Lift stay, 90 days.  That's December 5th.
> You can go back to State Court, schedule your sale on the real estate collateral
> to occur not before September 5th (sic).
> MR. MARKHAM:  December 5th.
> *MR. ASSAF:  On all of our collateral?*

limited relief from the stay to allow Colony Lender to proceed with a sale, after December 5, 2013, of the "real estate," because that piece of its collateral package was not implicated in AP 151.  The order was entered about a month later, on October 10 (the "October 10, 2013 Order").[37]

After that hearing, Colony Lender caused the state court to enter an Order of Foreclosure Sale, which authorized the sale of the "Property," described as the eight parcels of real estate, with the improvements, fixtures, appurtenances and interests, as was set forth in subsection (A) of the Foreclosure Judgment.[38]  This order did not include the "all rents and leases" provision of the Foreclosure Judgment's subsection (C).  Nor did it include subsections (B), (D) and (E).  On October 17, 2013, Colony Lender published its first Notice of Foreclosure Sale, set for December 6, 2013, which also omitted the Foreclosure Judgment's subsections (B) through (E).[39]

A week later, on October 24, 2013, the Debtors asked for reconsideration of the October 10, 2013 Order, because they had achieved a multi-party settlement which they hoped would be the basis of a confirmable Chapter 11 plan.[40]  The Debtors' motion was granted: the October 10,

---

THE COURT:  *On the real estate.*
MR. ASSAF:  *On the real estate only?*
THE COURT:  *Only.*  Because you're not going to get a penny on the other stuff for years, so let's do that one by the numbers and do it right. We're going to have a hearing on summary judgment as to whether your lien attaches to it.
MR. ASSAF:  Okay.
THE COURT:  I think that's the way to proceed.

(Main Case Doc. No. 143; 9/5/13 Tr. 49:23-52:2) (emphasis added).

[37]  Main Case Doc. No. 161.

[38]  Doc. No. 54, Ex. G.

[39]  Doc. No. 54, Ex. H.

[40]  Main Case Doc. No. 179.  Colony Lender declined to be a party to the settlement.

2013 Order was vacated, the stay was re-imposed, and Colony Lender's December 6, 2013 foreclosure sale was cancelled.[41]

The Debtors' Chapter 11 plan proposed the consolidation of all 18 acres of the Resort by a transfer of the Rec Facilities Property to the Association, subject to Colony Lender's liens which would be preserved until the Foreclosure Judgment was paid in full from the future sale or development of the property.[42]   After a 3-day trial, the Court denied confirmation, because the plan did not comply with §1129(b)(2)(A) or otherwise adequately protect Colony Lender's interests as mortgagee.  The Court converted the Triple Debtor case to Chapter 7, which resulted in the Trustee's appointment.[43]

In the meantime, Colony Lender filed another motion for relief from stay, requesting permission to "reschedule the foreclosure sale."[44]   Because the AP 151 appeal was still pending, the Court granted stay relief, but only to allow Colony Lender to "reschedule" the previously cancelled sale.

The foreclosure sale occurred on July 14, 2014.  The final Notice of Foreclosure Sale, dated June 14, 2014, omitted the descriptions of property that were in subsections (B) through (E) of the Foreclosure Judgment, as did the two previously published notices.[45]   At the sale, a

---

[41]  Main Case Doc. No. 225.

[42]  The Debtors' plan also proposed that the Court enter an order compelling Colony Lender to transfer its 15% interest to the Association.  The Debtors and Breakpointe would have transferred their interests, voluntarily, in accordance with the settlement.

[43]  A bench ruling was put on the record in open court on February 26, 2014; the memorandum opinion and orders denying confirmation were entered on March 21, 2014 (Main Case Doc. No. 256).  The cases were converted to Chapter 7 on March 25, 2014 (Main Case Doc. No. 261).

[44]  February 7, 2014 (Main Case Doc. No. 250).

[45]  In addition to the first scheduled sale (December 6, 2013), Colony Lender later scheduled a sale to occur on May 9, 2014, but it too was cancelled, for reasons that are not explained in the record.  *See* Doc. No. 54, Ex. J.

third party made an opening bid of $15,200,000, which exceeded the amount due under the

Foreclosure Judgment.  Colony Lender elected not to accept the cash payoff.  Instead, it elected

to take the property, by making a $1.00 overbid.[46]

A certificate of title was issued on July 25, 2014; but, it included subsections (B) through

(E) from the Foreclosure Judgment, which was inconsistent with the June 14, 2014 Notice of

Foreclosure Sale.[47]  Colony Lender filed a motion to amend the Certificate of Title, which was

granted.  On August 7, 2014, the clerk issued an Amended Certificate of Title Per Order, which

omitted the descriptions of property in subsections (B) through (E) of the Foreclosure

Judgment.[48]

Colony Lender's Rent Collection Actions

Colony Lender and its development partner, Unicorp National Developments, Inc.

("Unicorp"), then took steps to induce Unit Owners to convey their condominium units to

Unicorp, which wants to redevelop the entire 18 acres.  For years, the parties in the related

bankruptcy cases have referred to the strategic importance of pursuing Unit Owners – personally

and *in rem* as to liens on their units – for all rent due under the defaulted Rec Lease.[49]  Section

4.4 of the 1973 Declaration of Condominium provides:

*   *   *

> "Each present and future Residential Unit owner, his heirs, grantees,
> personal representatives, successors and assigns, (except for owners of Units

---

[46]  After applying its credit bid, Colony Lender paid the additional amount, which produced a surplus that was later disbursed to the Trustee.  Main Case Doc. No. 382 (8/12/14 tr. 7:4-14, 12:10-15); Main Case Doc. No. 332 at 4.

[47]  Doc. No. 54, Ex. M.

[48]  Doc. No. 54, Exs. N and O.

[49]  The issues of whether individual Unit Owners are personally liable for rents due under the Rec Lease, or whether their units are subject to liens therefor, is not before the Court.  The Court makes no finding − or ruling − on the merits of these issues.

> *500, 501, Vagabond Unit and Beachview unit) and the Developer, as present*
> *owner of all of the Residential Units (except for Units 500, 501, Vagabond*
> *Unit and Beachview Unit) and condominium property, shall be bound by said*
> *lease to the same extent and effect as if he had executed said lease for the*
> *purpose therein expressed, including but not limited to (a) subjecting all his*
> *right, title and interest in his condominium parcel, the condominium and the*
> *Association to the lien rights granted the Lessor in Section 9 of said lease and*
> *creating, constituting, affirming and imposing such lien under Section 9 of*
> *said lease, ab initio and anew against such owner's condominium parcel;"*

* * *

> *"The provisions of this paragraph 4.4 shall be deemed to be declared*
> *a covenant running with the land of the condominium and shall until the*
> *Lessor shall declare otherwise, remain as such and be in full force and effect*
> *during the term of said lease whether or not the condominium in this*
> *Declaration created be sooner terminated."[50]*

On August 15, 2014, Colony Lender sent demand letters to most of the Unit Owners stating that "by virtue of a foreclosure sale . . . and a purchase from the Field Trust, Colony Lender has succeeded to the [95%] interest of [CBA] (the "Lessor") . . . in that certain [Rec Lease] . . . ." The letter demanded that each Unit Owner pay the sum of $5,116,664.24 plus per diem interest. The letter threatened to hold each Unit Owner jointly and severally liable for about $42 million. But, the letter also offered each Unit Owner a release from personal liability and cash consideration if they conveyed their condominium unit to an affiliate of Unicorp.

A month later, on September 16, 2014, Colony Lender sued most of the Unit Owners in state court, alleging that each Unit Owners is "personally jointly and severally liable for all amounts due" under the Rec Lease.[51] The Complaint sought recovery of some $3.6 million of rent that had accrued before the foreclosure sale, when the Debtors still owned their interests in

---

[50] Doc. No. 34, Ex. B at 2-3.

[51] *Colony Lender, LLC v. 1620 Properties LLC, et al.*, Case No. 2014 CA 005408 NC. Initially, on September 12, 2014, Colony Lender had filed suit against the Unit Owners in United States District Court, but it was voluntarily dismissed for lack of diversity jurisdiction. Main Case Doc. No. 359, Ex. A.

the Rec Facilities Property.  On September 22, 2014, Colony Lender recorded a notice of *lis pendens* against all of the condominium units.

The Stay Violation Dispute

The Trustee responded initially by notifying counsel for Colony Lender that any action to collect rents would violate the automatic stay.[52]  After Colony Lender filed its lawsuit, the Trustee filed a motion in the Triple Debtor case alleging that by seeking to collect rents that had come due before the foreclosure sale, Colony Lender and Unicorp had taken action to seize control of property of the Debtors' estates, in violation of § 362(a)(3).[53]  The Association, for itself and certain Unit Owners, filed its own motion for sanctions against Colony Lender, Unicorp and their respective principals, alleging damages from the stay violation.[54]

In the stay violation matter, the Court ruled, on substantially the same undisputed facts that are involved in this proceeding, that by trying to collect from Unit Owners the rents that had come due prior to the foreclosure sale, Colony Lender and the other respondents, after being alerted by the Trustee to the automatic stay issue, had acted to take control of property of the Debtors' estates, thus willfully violating the automatic stay.[55]  To restore the *status quo ante*, the Court directed Colony Lender to cease its rent collection actions, dismiss its lawsuit against Unit Owners, remove the *lis pendens* on condominium property, and offer rescission to the Unit

---

[52]  Main Case Doc. No. 413 at 12 (Ex. B).

[53]  Section 362(a)(3) stays any act, by any entity, to obtain possession of property of the estate or to exercise control over the property of the estate.  No actions were taken by Colony Lender to collect on the Lease Rejection Damages Claims, but the same legal principles apply to those assets.  The initial motion for sanctions was filed on August 19, 2014.  Main Case Doc. No. 332.  The Trustee filed an Amended Motion on September 3, 2014.  Main Case Doc. No. 342.

[54]  Main Case Doc. Nos. 334 and 359.

[55]  Memorandum Opinion on Motions for Sanctions Against Colony Lender LLC, et al., March 18, 2015 (Main Case Doc. No. 406).

Owners who had accepted the settlement offer.[56]  After a later trial, the Court imposed monetary

sanctions of $69,628.50, jointly and severally, on Colony Lender and the other respondents, to

compensate the Debtors' estates and, in part, the Association for attorneys' fees and costs incurred

in prosecuting their stay violation motions.  These rulings are still subject to appellate review.[57]

The Trustee also filed this adversary proceeding, to obtain a declaratory judgment that the

Debtors' interests in the Rec Lease and all claims for rent under the Rec Lease were not

transferred to Colony Lender by the foreclosure sale (Count I).[58]

Colony Lender argues that because of a 1973 covenant that runs with the land, the Rec

Lease is inseparable from the real estate that it acquired in the foreclosure sale.  As successor

plaintiffs, the Association and Breakpointe counter that, as a result of this Court's limited relief

from stay and the satisfaction of the judgment by the sale of the land, Colony Lender has no

further right to continue its pursuit of other collateral.  In turn, they argue that the Debtors'

interests in the rent collection rights were severed from their interests in the fee.  Therefore, they

assert that the rent collection rights remained assets of the estates that were later conveyed by the

Trustee to the Association.

---

[56]  Order Regarding Equitable Relief and Sanctions for Willful Violations of the Automatic Stay by Colony Lender, LLC, et al. (Main Case Doc. No. 441).

[57]  Initially Colony Lender took an appeal from the Memorandum Opinion on Motions for Sanctions Against Colony Lender LLC, et al. on March 31, 2015.  Main Case Doc. No. 411.   The appeal was dismissed on April 10, 2015; the District Court found that there was no final judgment to properly appeal because this Court had deferred ruling on damages.  USDC Case 8:15-cv-00793-JDW, Doc. No. 8.

[58]  Count II of the complaint seeks to avoid under § 549(a) any such transfer, if it ever occurred, because it was not authorized by this Court.

<u>SUMMARY JUDGMENT STANDARD</u>

Federal Rule of Civil Procedure 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."[59]  Summary judgment is warranted when "there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial."[60]  Here, the material facts are undisputed.

<u>ANALYSIS</u>

1.      The Automatic Stay was Never Modified to Allow the
        Foreclosure Sale of the Debtors' Interests in the Rec Lease
        <u>or Rights to Collect Rent Thereunder.</u>

This Court has already ruled, in the stay violation dispute, that the automatic stay was never modified to allow a foreclosure sale of Debtors' interests in the Rec Lease, the Lease Rejection Damages Claims, or the right to collect Rec Lease rents; nor can such authorization be implied.  The analysis inherent to that ruling is summarized below and incorporated herein by reference.[61]

AP 151 was pending when the Court initially granted Colony Lender permission to sell the mortgaged real estate in the October 10, 2013 Order.  The nomenclature employed by the Court and the parties as to "real estate" being different from the Rec Lease and rent collection rights was consistent with the 1995 Mortgage, the Foreclosure Judgment, the Debtor's schedules,

---

[59]  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1996).

[60]  *Id.* at 322-23.

[61]  Main Case Doc. No. 406.

and at least two of the pleadings filed by Colony Lender early in these cases.  All of these documents and papers distinguished between (a) the land with improvements and (b) other categories of collateral, such as rents and leases from the property.  Colony Lender's first Notice of Foreclosure Sale deliberately removed the "all rents and leases" provision of the Foreclosure Judgment's subsection (C), the evident purpose being compliance with the permission to sell only the "real estate" per the October 10, 2013 Order.[62]

When this Court granted the Debtors' motion to reconsider that order, it did so by a form of order, as to which the parties agreed, that vacated the October 10, 2013 Order and reimposed the stay.[63]  In 2014, when Colony Lender again asked for relief from the stay, this Court's order granting summary judgment in AP 151 was on appeal.  Colony Lender sought permission only to allow it to "reschedule" the previously cancelled sale.  The only sale to be rescheduled was the one that had been noticed for December 6, 2013, under the limitations of the October 10, 2013 Order.

In ruling on the stay violation, this Court concluded that the March 25, 2014 Order had the effect of restoring the relief that had been previously granted to Colony Lender by the October 10, 2013 Order – allowing the sale of only the real estate collateral because Colony Lender's lien on the real estate was not in controversy:

> "The stay was never lifted as to the Debtors' rights to collect its Lease Rejection Damages Claims against the Association, nor on their inchoate claims against Unit Owners to collect the same accrued, but unpaid, rents.

---

[62]  *See* Declarations of Morgan Bentley, attorney for Colony Lender (Main Case Doc. No. 369), and Charles Bartlett, attorney for Debtors (Main Case Doc. No. 371).  Colony Lender now argues that the attorneys who prepared the notices of sale, Messrs. Bentley and Bartlett, intended that the removal of subsections (B) through (E) was not to "exclude a specific subset of real property interests," but to obey the Bankruptcy Court's directive that no "personal property" be sold at the sale.  Doc. No. 23 at 6-9; Doc. No. 64 at 18.  But, this argument misstates the orders of this Court, which never provided what was <u>not</u> to be sold.

[63]  Main Case Doc. No. 225.

Thus, those rights could not have been lawfully sold through foreclosure to Colony Lender. Even if these claims are construed to be "real property," this Court expressly withheld and deferred granting relief from the automatic stay to Colony Lender to enforce its lien against such rights.

Colony Lender was paid in full through the foreclosure sale and has no further lien on those rights, which are now unencumbered assets of the CBTC and CBI estates. The Court concludes that Respondents have willfully violated the automatic stay by interfering with those estate assets.

Therefore, for the reasons stated herein, the Court concludes that Colony Lender and the other Respondents willfully violated 11 U.S.C. § 362(a)(3)."[64]

This Court never authorized the rent collection rights to be sold in a foreclosure sale. Of course, if the sale of the real estate had not satisfied the Foreclosure Judgment, Colony Lender would have been entitled to return to this Court to seek expanded relief from stay to sell the remaining collateral.[65]

Colony Lender takes the position that the March 25, 2014 Order, allowing it to reschedule the foreclosure sale, did not *restrict* what could be sold.[66] Colony Lender argues that the first sale order had been vacated and was never reinstated; thus, it did not functionally exist for the Court to interpret it.[67] Such restriction, according to Colony Lender, arises only from the Court's interpretation of the October 10, 2013 Order "applied forward" through the March 25, 2014 Order, which Colony Lender characterizes as an irregularity that denies it due process.[68]

---

[64] Main Case Doc. No. 406 at 22-23.

[65] *See Warehouses of Florida, Inc. v. Hensch*, 671 So. 2d 885, 887 (Fla. 5th DCA 1996) ("In *Patron v. American National Bank of Jacksonville*, . . . this Court . . . held that because the mortgaged property was sold at foreclosure sale to the mortgagee for the full amount of the final judgment of foreclosure, the judgment was satisfied in full.").

[66] Doc. No. 29 at 9.

[67] Colony Lender's Supplemental Submission in Opposition to Trustee's Cross-Motion for Summary Judgment and in Support of Colony Lender's MSJ filed on June 19, 2015 (Doc. No. 34).

[68] Doc. No. 29 at 9-10; Doc. No. 64 at 29.

But, the automatic stay of § 362(a)(3) is all inclusive.  It has the effect of a federal court injunction barring all actions to take possession or control of any assets of a bankruptcy estate. Creditors may proceed against estate assets only to the extent that the stay is expressly modified by a court order.  Thus, there is no need for this Court to articulate what is *excluded* from a grant of relief from the stay.  As noted above, no court order was ever entered authorizing a foreclosure sale of "all" of Colony Lender's collateral or a sale of the Rec Lease rent collection rights.

In the March 25, 2014 Order, entered while the AP 151 appeal was pending, the Court granted only the limited relief that Colony Lender requested – the *rescheduling* of the earlier cancelled sale.  Colony Lender could not have been misled by this, because it thereafter employed (twice) the same Notice of Foreclosure Sale (omitting the "all rents and leases" provision) as it did in the initial notice for the first, cancelled sale.[69]  Colony Lender always had the right, particularly after the District Court's reversal in AP 151 on July 1, 2014, to ask this Court to expand the substantive relief to allow the sale of the Rec Lease, "all rents and leases," or any piece of the rent collection rights.  But, it never did so.

Colony Lender also argues, as it did in the stay violation dispute, that the District Court's reversal in AP 151 had the effect of recharacterizing all of the rent collection rights as "real estate," thereby broadening the scope of this Court's permission in the October 10, 2013 Order to sell "real estate collateral."  This Court has previously rejected that argument, for two reasons. First, the District Court's ruling dealt only with the continued perfection of Colony Lender's lien on two pieces of the rent collection rights following the pre-petition lapse of Bank of America's

---

[69]  The previous Notices of Foreclosure Sale were published on October 13, 2013, and on March 18, 2014.  The final operative Notice of Sale was published on June 4, 2014.

UCC financing statement.[70]  The ruling did not address the scope of stay relief that had been granted by this Court for the foreclosure sale.  Second, the District Court's ruling was stayed until the day after the foreclosure sale.  Thus, it could not have altered the scope of the previously-granted stay relief to allow that sale.

2.      The Debtors' Interests in the Rec Lease and
        Rent Collection Rights Were Not Sold at the Foreclosure Sale

In keeping with the underlying security documents, the Foreclosure Judgment specifically authorized Colony Lender, in subsection (C), to foreclose the Debtors' interests in *all* rents and leases from the described property.  The Foreclosure Judgment's subsection (C) is the only specific grant to Colony Lender of the right to sell the Debtors' combined interest in the Rec Lease and the rent collection rights.[71]  But, that authorization was deliberately omitted from the Order of Foreclosure Sale, the final Notice of Foreclosure Sale, and the Amended Certificate of Title.

Logically, the removal of the state court's only grant of the right to foreclose on *all* rents and leases must mean that *none* of the rents and leases were conveyed by the foreclosure sale. This conclusion is not overcome by Colony Lender's reliance on the general grant of various interests in the  Foreclosure Judgment's subsection  (A), which was carried forward through the sale: "*all of the  debtors' estates, separate estates, rights, tenements and hereditaments and*

---

[70]  USDC Case 8:14-cv-726-JSM, Doc. No. 27 ("The issue before this Court is whether the lender has a perfected security interest in the rents from the lease.").

[71]  Colony Lender's acquisition, by agreement, of the Field Trust's 15% interest in the Rec Lease and rent collection right is not at issue here.

possessory interests" and "all claims whatsoever in law or in equity."  Colony Lender argues

that these terms are broad enough to include the Rec Lease and the rent collection rights."[72]

Colony Lender's position is contrary to the structure of the 1995 Mortgage, the source of

its collateral rights in Debtors' assets.  The 1995 Mortgage did not treat "rents and leases" as

being included in "hereditaments" or "estates."  Instead, it described "hereditaments," "estates,"

"claims at law or in equity," and "rents, issues and profits" as distinct property interests in

subparagraph "C."  The Rec Lease itself was separately described in subparagraph "D."[73]  The

Foreclosure Judgment also treated "hereditaments," "estates" and "claims at law or equity" in

subsection (A), while setting apart "*all* rents and leases" in subparagraph (C).  The stronger

argument, advanced by the Association and Breakpointe and accepted by the Court, is that the

deletion from the Notice of Foreclosure Sale of the Foreclosure Judgment's specific language in

subsection (C) controls over the retention of the general language of subsection (A).[74]

---

[72]  Colony Lender relies, in part, on Black's Law Dictionary to argue that a "leasehold" is an "estate in land" and, therefore, the Rec Lease was implicitly within the relief from stay to sell the Debtors' interests in "real estate." Colony Lender also argues that future rents are a type of "hereditament."  Black's Law Dictionary defines an "estate in land" as "[p]roperty that one has in lands, tenements, or hereditaments."  Black's Law Dictionary (9th ed. 2009).

[73]  The 1995 Mortgage separately described the collateral for the loans as the Land (subparagraph A), the Improvements (subparagraph B), Appurtenances, including tenements, hereditaments, rents, issues and profits, and all the estate and claim at law or in equity from the land (subparagraph C), and the Rec Lease (subparagraph (D):

> "(D)  Lease.  All right, title and interest of Borrower or any of them as Lessors under Recreational Facilities Lease Agreement dated November 2, 1973, as amended from time to time, recorded in Official Records Book 1025, at page 245 of the Public Records of Sarasota County, Florida (the Rec Lease)."

[74]  *See Weldon v. Commercial Union Assurance Co.*, 710 P.2d 89, 91 (N.M. 1985)  ("[A] specific provision relating to a particular subject will govern in respect of that subject, as  against a general provision, even though the latter, standing alone, would be broad enough to  include the subject to which the more specific provision relates").  As noted by Florida's Third Circuit Court of Appeal, "['lands, messuages, tenements, and hereditaments'] are ancient and archaic words which, in our opinion, do not have a clear, unambiguous, commonly known meaning to lay persons (or even, perhaps, to all lawyers.)"  *Mead v. Mead*, 193 So. 2d 476, 478 (Fla. 3d DCA 1967).

Colony Lender also asserts that this Court cannot review what happened in the state court under the doctrines of *res judicata*, collateral estoppel, and the *Rooker-Feldman* cases.[75] But, a bankruptcy court has the inherent authority and original jurisdiction to interpret and enforce the automatic stay.[76] The automatic stay is self-executing, effective upon the filing of a bankruptcy petition. It has the effect of a federal court injunction.[77] Any court order issued by a state court alleged to be in violation of the stay can be reviewed, and even declared void, by a bankruptcy court.[78]

None of the state court foreclosure orders (the Foreclosure Judgment, the Order of Foreclosure Sale, and the order granting Colony Lender's motion to amend the certificate of sale) include any findings as to ownership of the Rec Lease or the principal issues in this proceeding – whether the scope of the stay relief granted to Colony Lender permitted the sale of the rent collection rights and whether Colony Lender's asserted right to collect rents under the

---

[75] *See Rooker v. Fidelity Trust Co.*, 263, U.S. 413 (1923) and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983) and 28 U.S.C. §§ 1331 and 1257.

[76] *Alderwoods Group, Inc. v. Garcia*, 682 F.3d 958, 970 (11th Cir. 2012) (bankruptcy court necessarily has power to enforce its own orders regarding its administration of bankruptcy estate); *see also*, *In re Ranch House of Orange-Brevard, Inc.*, 773 F.2d 1166 (11th Cir. 1985) (bankruptcy judge who presided over a case from its inception is in the best position to clarify any apparent inconsistencies in the bankruptcy court's rulings).

Additionally, federal statute 11 U.S.C. § 105(a) gives the court the authority to "*sua sponte*, tak[e] any action or mak[e] any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process." This includes a violation of the automatic stay provision. *Jove Eng'g, Inc. v. I.R.S.*, 92 F.3d 1539, 1542 (11th Cir. 1996).

[77] *Jove Engineering, Inc. v. IRS*, 92 F.3d 1539, 1546 (11th Cir. 1996)

[78] The automatic stay is effective against all the world, regardless of whether a party had notice of the bankruptcy filing or of the automatic stay. *In re Peralta*, 317 B.R. 381, 389 (9th Cir.BAP2004). In the Eleventh Circuit, actions taken in violation of the automatic stay are void *ab initio* and therefore without effect. *United States v. White*, 466 F.3d 1241, 1244 (11th Cir.2006) (citing *Borg–Warner Acceptance Corp. v. Hall*, 685 F.2d 1306, 1308 (11th Cir.1982)). This includes orders entered by state courts. *In re Clarke*, 373 B.R. 769 (Bankr.S.D.Fla.2006) (citing *In re Albany Partners, Ltd.*, 749 F.2d 670, 675 (11th Cir.1984))." *See also*, *In re Newgent Golf, Inc.*, 402 B.R. 424, 433 (Bankr.M.D.Fla.2009) (Jennemann, J.). *See generally*, *Gruntz v. County of Los Angeles (In re Gruntz)*, 202 F.3d 1074 (9th Cir. 2000).

Rec Lease survived the extinguishment of its lien after it acquired the real estate.  The doctrines of *res judicata* and collateral estoppel do not apply here.

This Court's determination of the scope of the stay relief that it granted is not an appellate review of any finding or judgment entered by the state court.  This is not a *Rooker-Feldman* scenario, where one party loses in state court and subsequently initiates a federal court case to relitigate the same issue.

> "[T]he *Rooker-Feldman* doctrine is not implicated by collateral challenges to the automatic stay in bankruptcy.  A bankruptcy court simply does not conduct an improper appellate review of a state court when it enforces an automatic stay that issues from its own federal statutory authority."
>
> *    *    *
>
> "If state courts were empowered to issue binding judgments modifying the federal injunction created by the automatic stay, creditors would be free to rush into friendly courthouses around the country to garner favorable relief."[79]

In this case, because the state court did not adjudicate the issues of the applicability of the automatic stay or ownership of the Rec Lease after the sale, this Court's ruling herein will not overturn any of the state court's determinations.  Thus, the *Rooker-Fledman* doctrine is inapplicable.

---

[79] *In re Gruntz*, 202 F.3d at 1083-84.  "Under the *Rooker-Feldman* doctrine, lower federal courts lack subject-matter jurisdiction over claims that effectively challenge state-court judgments."  *Wilson v. Deutsche Bank Nat'l Trust (In re Wilson*, 2011 U.S. App. LEXIS 3392, *2 (2d Cir. Feb. 18, 2011) (citing *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 486-87 (1983); *Rooker v Fidelity Trust Co.*, 263 U.S. 413, 415-16 (1923)); *accord In re Siskin*, 258 B.R. at 564 (The *Rooker-Feldman* doctrine deprives a federal court of jurisdiction to adjudicate claims when the identical claims decided in the state court proceeding are raised in a subsequent federal proceeding or to the extent that the claims raised in the federal proceeding are "inextricably intertwined" with the state court's determinations.).  *In re Clarke*, 373 B.R. at 771 (following *In re Gruntz*, holding that the *Rooker-Feldman* doctrine applies to bankruptcy court proceedings but that doctrine does not abrogate the bankruptcy court's authority to enforce the automatic stay).  *In re Cole*, 2016 WL 3855259, at *3 (Bankr. N.D. Ga. June 24, 2016) (following line of cases that concludes the *Rooker–Feldman* doctrine does not bar a bankruptcy court from reviewing a state court's determination of whether the automatic stay applies).

The issue in this proceeding, as in the stay violation dispute, is whether the result that Colony Lender proclaims that it achieved was ever authorized by this Court to be taken.   Having reviewed the terms and context of its own orders, this Court concludes, again, that it granted relief from the automatic stay only for the sale of the Debtors' interests in the land with improvements.   At the September 5, 2013, hearing, the Court was asked, but declined, to allow the sale of *all* of Colony Lender's collateral.   No order was ever entered allowing that; no order was entered allowing the sale of the Rec Lease or the rights to collect rent under the Rec Lease.  And, having reviewed the Foreclosure Judgment and foreclosure sale proceedings, including the notices describing the property to be sold, the Court concludes that no leases or rent collection rights were included in the July 14, 2014 sale.   Therefore, the foreclosure sale did not violate the automatic stay and was consistent – and deliberately made so – with this Court's limited grant of stay relief.

3. The Debtors' Combined 80% Interest in the Rec Lease and
Rent Collection Rights was Severed From the Real Estate.

Colony Lender now contends that the limited scope of stay relief granted by this Court is irrelevant.   It also argues that the removal of the "all rents and leases" provision from the final Notice of Foreclosure Sale and the Amended Certificate of Title is not relevant either.   Colony Lender argues that by acquiring the land, it automatically acquired the Debtors' interests in the rent collection rights because the terms of the Rec Lease (and the alleged obligations of the Unit Owners to pay rent) are included in recorded covenants that run with the land of both the condominium and the Rec Facilities Property.[80]

---

[80]   Colony Lender cites both Section 4.4 of the Declaration of Condominium, quoted above, and Section 22.19 of the Rec Lease, which states:

26

The Court has considered the general rule that a covenant that runs with the land also travels with the fee.[81]  Colony Lender cites that rule to argue that when it acquired the land, it acquired the Debtors' interests in the Rec Lease rent collection rights as an inextricable element of the real estate.[82]  But, the facts of this case, particularly the circumstances in which Colony Lender acquired the Debtors' 80% interest in the fee, bars application of that rule here.

When the Triple Debtor case began, Colony Lender held liens on several distinct categories of Debtors' assets, as differentiated in the 1995 Mortgage and, later, in the Foreclosure Judgment.  Colony Lender's claim to the Debtors' 80% interest in the Rec Lease and rent collection rights was a collateral interest, subject to being extinguished at any time by payment of the debt.  Even though the Foreclosure Judgment granted the right to sell all of the rents and leases from the real estate, Colony Lender still would have had no claim to the Rec Lease and rent collection rights if the Foreclosure Judgment had been satisfied before the sale.

Colony Lender obtained relief from this Court to begin its debt collection by selling only the real estate.  The right to sell any other collateral was deferred.  In turn, the specific grant of the

---

*"Covenants Running with the Land.  All covenants, promises, conditions and obligations herein contained or implied by law are covenants running with the demised premises and covenants running with the lands described in the Declaration of Condominium of The Condominium, and the same shall attach to and be binding upon the Lessor, its successors and assigns, and the Lessee, its successors and assigns, its present and future members and present and future owners of condominium parcels in The Condominium and their heirs, personal representatives, successors and assigns."*  Doc. No. 34, Exh. B at 20.

[81] *Winn-Dixie Stores, Inc. v. Dolgencorp, Inc.*, 964 So.2d 261, 264 (Fla. 4th DCA 2007); *PGA N. II of Florida, LLC v. Div. of Admin., State of Florida Dept. of Transp.*, 126 So.3d 1150, 1153 (Fla. 4th DCA 2012).

[82] A covenant is said to run with the land when either the liability to perform it or the right to take advantage of it passes to the grantee or other assignee of the land, as the covenant subject to this action does.  *Osius v. Barton,* 109 Fla. 556, 147 So. 862 (1933).  A covenant must have a relation to the land or the interest conveyed in order that the covenant may run with the land; the thing required to be done must be something that touches the land, interest or estate and the occupation, use or enjoyment of it. *Caulk v. Orange County,* 661 So.2d 932 (Fla. 5th DCA 1995). In order that a covenant may run with the land, either the technical elements of covenants running with the land must be expressed in it or the covenant must disclose that it is the purpose and intention of the covenanting parties to impress upon the covenant the character of one running with the land. *Armstrong v. Seaboard Air Line RY. Co.,* 85 Fla. 126, 95 So. 506 (1922).

right to sell *all* rents and leases was removed from the final Notice of Foreclosure Sale. Instead of accepting payment in full from the sale to the opening bidder – or seeking relief from stay to expressly authorize the addition of rent collection rights to the sale – Colony Lender elected to take title to the Debtors' interest in the legally-described land parcels. By doing so, Colony Lender's lien on other assets was extinguished and it took the Debtors' interests in the fee without the right to collect the Rec Lease rents.

It is not correct to say, as Colony Lender argues, that interests in rents and leases may never be severed from the fee. A fee owner, for example, may convey the rents, both accrued and unaccrued, to one party and later transfer the underlying land to another party.[83] In 2011, the Field Trust retained a portion of the rent collection rights (its Lease Rejection Damages Claim) while transferring its 15% interest in the fee and the balance of its rent collection rights to Colony Lender.

In the foreclosure case, it was Colony Lender's obligation to draft the Notice of Foreclosure Sale. Colony Lender also had the duty "to determine the extent of the property offered for sale."[84] By omitting the Foreclosure Judgment's specific grant of the right to sell "all rents and leases" from the Foreclosure Sale Order, the final Notice of Foreclosure Sale and

---

[83] *See McBryde v. Lowe*, 163 So. 2d 896 (Fla. 2d DCA 1964), citing *Schmid v. Baum's Home of Flowers, Inc.*, 162 Tenn. 439, 447 (Tenn. 1930) ("It is, however, universally recognized that rent is severable from the reversion, and that the owner of the reversion may effect this severance by granting or transferring the rent to another."); *see also Allen v. Pullam*, 223 Mo. App. 1053, 10 S.W. 2d 64 (1928) and *Winnisimmet Trust v. Libby*, 232 Mass. 49, 122 N.E. 575 (Mass. 1919). *Schmid v. Baum's Home of Flowers*, 37 S.W. 2d 105, 108 (1931) (internal quotations omitted); *Faircloth v. Flewellen*, 130 S.W.2d 1098, 1100 (Tex. Civ. App. 1939) ("Moreover, the doctrine that unaccrued rents pass to the purchaser is not applicable where they are 'severed' before the sale, by the vendor assigning the rents or rental notes to a third person or giving a mortgage thereon.").

[84] *Archer v. Levy*, 543 So. 2d 863, 865 (Fla. 3d DCA 1989). Mortgage foreclosure procedures, including the requirements of the notice of foreclosure, are of statutory origin and are strictly construed. *See 601 West 26 Corp. v. Equity Capital Co.*, 177 So. 2d 739, 740 (Fla. 3d DCA 1965).

the Amended Certificate of Title, Colony Lender caused those interests to be severed from the

Rec Facilities Property upon satisfaction of the Foreclosure Judgment.[85]

Finally, Colony Lender protests that a ruling for the Association and Breakpointe would

strip a portion of its collateral from the real estate, long after the sale at which these assets were

conveyed at public auction.[86]  But, Colony Lender voluntarily passed on the opportunity to

receive payment of 100% of what it was due as mortgagee, which would have left all of its

collateral free of its liens.  Having elected to take the real estate instead, Colony Lender

relinquished its right to pursue any additional property of the Debtors.[87]  Further, the Rec

Facilities Property that it acquired is no longer burdened by a tenancy.  The property is not being

used or occupied.  The current owners of the fee – Colony Lender (95%) and Breakpointe (5%) –

have no further obligations to the Association, which rejected the  Rec Lease nearly eight years

ago and is no longer in possession.[88]

---

[85]  In footnote 32 of the Memorandum Opinion in the stay violation dispute, this Court recognized that claims for future rents generally run with  the land.  However, those decisions also recognize that the right to collect future rents can be severed by the grantor from the fee and withheld from the grantee.  Main Case Doc. No. 406, at 15. For example, in *In re Westchase I Associates, L.P.*, 126 B.R. 692 (W.D.N.C. 1991), the court was faced with the determination of whether the mortgagee had an interest in the rents of profits of the mortgaged property.  In that case, the mortgagee was assigned an interest in the rents and profits if a default on the mortgage occurred. Looking at state law (North Carolina), the court determined that parties may contract with reference to rents.

[86]  Doc. No. 23 at 5-6, 10.

[87]  *See Warehouses of Florida, Inc. v. Hensch*, 671 So. 2d at 887 ("the established law in this district is that when a mortgagee purchases the foreclosed property by bidding the full amount of the final judgment of foreclosure, the mortgagee's judgment is satisfied in full and a deficiency judgment is not possible. This principle makes sense. No other purchaser could purchase the property at a foreclosure sale and later claim that delinquent taxes, payments on other mortgages, or tenants' deposits should be included in a judgment against the mortgagor. Why should the mortgagee have such an advantage?").

[88]  Unit Owners have no direct contractual right to occupy or use the Rec Facilities Property.  Section 4.4 of the Declaration of Condominium provides that "[e]ach unit owner shall have the right to use, occupy and enjoy the Recreational Facilities *through* the Association, as lessee . . . .

CONCLUSION

Stay relief was never granted by this Court to allow the sale of the Debtors' rights in the Rec Lease or to collect Rec Lease rent.  These rights could not have been acquired by Colony Lender at the foreclosure sale.  The Debtors' interests in the rent collection rights were additional collateral for a debt which was satisfied by the foreclosure sale of the real estate.  Thus, Colony Lender's lien on the Rec Lease and rent was extinguished by the sale.  The Rec Lease and the rent collection rights became unencumbered assets of the Debtors' bankruptcy estates which, in turn, were transferred by the Trustee to the Association.

For these reasons, Colony Lender's Motion for Summary Judgment as to Counts I and II of the Trustee's complaint must be denied.[89]  The Trustee's Cross Motion for Summary Judgment[90] is granted as to Count I of the Trustee's complaint.   The Cross Motion for Summary Judgment filed by the Association is granted as to Count I of its three-count complaint.[91]  Similarly, the Cross Motion for Summary Judgment filed by Breakpointe is granted as to Count I

---

[89] Doc. No. 12; Supplemental Motion for Summary Judgment, Doc. No. 29.

[90] Doc. No. 17.

[91]   In its three-count complaint (Doc. No. 54), the Association asks the Court to: (1) declare that none of the Rec Lease, Rec Lease Damages Claim, or any rights under the Rec Lease were transferred to Colony Lender in the foreclosure sale; (2) avoid any unauthorized post-petition transfer pursuant to 549 of the Bankruptcy Code if the Rec Lease and/or Rec Lease Damages Claim did transfer to Colony Lender through the foreclosure sale; and (3) declare that the Rec Lease was terminated by the Association and its Unit Owners after the Association filed its bankruptcy and rejected the Rec Lease.

In its cross motion for summary judgment (Doc. No. 55), the Association requests the Court declare that the Debtors' undivided eighty percent (80%) interests in the Rec Lease, the Rec Lease Damages Claim, and any rights arising under the Rec Lease were not acquired by Colony Lender at the Foreclosure Sale and, by virtue of Colony Lender's lien being extinguished by the Foreclosure Sale, such assets are unencumbered assets of the Debtors transferred to Colony Beach and Tennis Club Association, Inc.; and (2) deny the Motion for Summary Judgment filed by Colony Lender, LLC.

of its one-count complaint.[92]  Colony Lender's Cross Motion for Summary Judgment as to the

Association's Intervenor Complaint is denied.[93]  And, finally, Colony Lender's Cross Motion for

Summary Judgment as to Breakpointe's Intervenor Complaint is denied.[94]

Accordingly, the Court will enter a separate judgment declaring that pursuant to 28

U.S.C. § 2201, that the Rec Lease and rights thereunder did not pass to Colony Lender by the

foreclosure sale of Debtors' real estate and, after said foreclosure sale, the Rec Lease and all

rights thereunder remained as assets of the Debtors' estates, free and clear of any liens or

interests of Colony Lender.


Clerk's Office to serve.

---

[92] In its one-count complaint (Doc. No. 56), Breakpointe asks the Court to declare that none of the Rec Lease, Rec Lease Damages Claim, or any rights under the Rec Lease were transferred to Colony Lender in the foreclosure sale.

In its cross motion for summary judgment (Doc. No. 57), Breakpointe requests the Court declare that the Debtors' undivided eighty percent (80%) interests in the Rec Lease, the Rec Lease Damages Claim, and any rights arising under the Rec Lease were not acquired by Colony Lender at the Foreclosure Sale and, by virtue of Colony Lender's lien being extinguished by the Foreclosure Sale, such assets are unencumbered assets of the Debtors transferred to Colony Beach and Tennis Club Association, Inc.; and (2) deny the Motion for Summary Judgment filed by Colony.

[93] Doc. No. 64.  In Count III of the Association's Intervenor Complaint (Doc. No. 54), the Association seeks declaratory relief that the Rec Lease was terminated by the Lessors after the Association rejected the Rec Lease in its bankruptcy case.  Count III of the Association's Intervenor Complaint raises factual issues that have not yet been tried.  Accordingly, Colony Lender's Cross Motion for Summary Judgment is denied as to Count III of the Association's Intervenor Complaint.

[94] Doc. No. 63.